IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ROBERT E. TAYLOR,<br>TDCJ Nos. 01234625, 509224, 1015194 | §<br>§<br>§ | |
| Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 1:21-CV-00122-BU |
| JONES COUNTY TEXAS, *et al.*, | §<br>§<br>§ | |
| Defendants. | §<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Robert Taylor filed this *pro se* civil rights action under 42 U.S.C. § 1983

on June 30, 2021, alleging Defendants were deliberately indifferent to his serious medical

needs at the Jones County Jail (JCJ), where he was detained post-conviction for a parole

violation. Dkt. No. 2. Although Taylor has paid the filing fee, his claims remain subject to

this Court's preliminary screening under 28 U.S.C. § 1915A because Taylor, a detainee at

the time he filed this action, brings his suit against government officials. *See* 28 U.S.C.

§ 1915A(a). The case was transferred to the undersigned for preliminary screening under

that statute. Dkt. No. 9. And because Taylor has not consented to a magistrate judge

exercising the full jurisdiction of this Court, the undersigned submits these Findings,

Conclusions, and Recommendations for the disposition of his claims.

After a review of Taylor's Amended Complaint, his responses to a questionnaire,

and the authenticated JCJ records, the undersigned submits these Findings, Conclusions,

and Recommendations for the disposition of his claims. For the reasons explained below, the undersigned RECOMMENDS that the Court DISMISS Taylor's claims.

## I. JURISDICTION

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Taylor filed his claims under 42 U.S.C. § 1983. Dkt. No. 18. The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after Senior United States District Court Judge Sam R. Cummings transferred Taylor's case to the undersigned for preliminary screening. Dkt. No. 9; 28 U.S.C. § 636(b)(1)(B).

## II. FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favors the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

Taylor complains that he received inadequate medical care at the Jones County Jail (JCJ) when he was administered the wrong insulin for his diabetes. *See* Dkt. Nos. 13, 15, 18, 19, 38. He brings claims of deliberate indifference to his serious medical needs against (1) Jones County, (2) Sheriff Danny Jimenez, (3) Captain Racheal Garza, (4) Lieutenant FNU Marsh, (5) Michelle Corley, LVN, (6) Robert Young, PAC, (7) jailer FNU Garcia,

(8) jailer FNU Galvan, (9) jailer FNU Lozano, (10) and jailer FNU Gardena.[1] *Id.* Taylor asks the Court to award him monetary damages and permanent injunctive relief. Dkt. No. 18 at 3–5. However, he fails to specify the injunctive relief that he is requesting. *See id.*

Taylor arrived at the JCJ on August 12, 2020, after he was instructed to surrender for "fleeing to elude and [a] parole blue warrant." Dkt. No. 13 at 1–2. Taylor is a diabetic and alleges that he was not "allowed to visually witness the actual drawing" of his insulin "into the syringe" while he was incarcerated. Dkt. No. 18 at 6. Taylor states that he complained about this practice, and an administrator "agreed to allow [him] line of sight [view] to verify what was being drawn and injected into [his] body," but alleges that this arrangement "only lasted 4 or 5 days before they reverted back" to not allowing him to observe the insulin being drawn. *Id.*

Taylor claims that on September 18, 2020, around 9:00 p.m., after Defendants refused to allow him to observe his insulin being drawn, he received a "highly lethal dose of the wrong insulin" after an "unqualified jailer deliberately drew up the wrong medication." *Id.* Taylor alleges that this incorrect insulin rendered him "unconscious," and he was "left d[y]ing on the floor as 2 or 3 cell checks were . . . performed." *Id.* at 6–7. Taylor states that his medical situation was not discovered until two hours later, at approximately 11:15 p.m., when he was "ambulanced immediately to Hendricks Trauma Center." *Id.* at 7. Taylor states that when he was released from the hospital, an unknown

---

[1] The undersigned was able through the authenticated records to confirm the full names of some of the Defendants, but not all. The Clerk is directed to conform the docket to reflect the names above.

"jailer came to [him], apologized, stated he prayed all night for [him] and claimed he may have given [him] the wrong insulin." *Id.* Taylor also alleges that Officer Gardena violated his HIPAA rights because they read his "personal medical records out loud in front of other officers." *Id.*

## III.  THE PARTIES

Taylor's Amended Complaint alleges four distinct claims. His first claim is against jailers Garcia, Galvan, Lozano, Gardena, nurse Corley, and PAC Young[2] (collectively, non-supervisory Defendants). Dkt. No. 18. Taylor claims that these Defendants were deliberately indifferent to his medical needs. *Id.* at 3–4. Taylor's second claim is against Sheriff Jimenez, Captain Garza, and Lieutenant Marsh (collectively, supervisory Defendants) in their individual capacities, alleging that they were also deliberately indifferent to his medical needs. *Id.* at 3. Taylor's third claim is against all Defendants in their official capacities and Jones County for "fail[ing] to establish correct procedures for dispensing insulin in the county jail." *Id.* Taylor's final claim alleges that jailer Gardena violated Taylor's rights under the Health Insurance Portability and Accountability Act (HIPAA)—Pub. L. No. 104-191, 110 Stat. 1936 (1996)—by disclosing Taylor's personal medical information to other JCJ officers. *Id.* at 4, 6.

## IV.  LEGAL STANDARDS

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a

---

[2] The undersigned used the authenticated records to confirm the full names of several Defendants. The Clerk is directed to conform the docket to reflect the names above.

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (emphasis added). This means the factual allegations, while not required to be detailed, must amount to more than mere labels,

conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

# V. ANALYSIS

To state a claim under § 1983, Taylor must "allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). Taylor alleges that the Defendants have violated his right to medical care secured by the Eighth Amendment of the United States Constitution. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983); *see also Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).

## A.     Taylor's claim against the non-supervisory Defendants should be dismissed for failure to state a claim.

Taylor claims the non-supervisory Defendants were deliberately indifferent to his serious medical needs and that each was personally involved in providing him incorrect insulin on September 18, 2020. Dkt. No. 13 at 2–10.

The undersigned will first address Taylor's claims against jailers Garcia, Galvan, Lozano, and Gardena (collectively, jailer Defendants). The undersigned will then turn to Taylor's claim against Corley and Young.

### 1.     Deliberate-indifference standard

As explained above, although Taylor was detained at the JCJ, the basis for his detention was an alleged post-conviction parole violation. Dkt. No. 2. Regarding medical-

7

care claims, because "pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.'" *Hare*, 74 F.3d at 639. But while convicted prisoners' rights in this regard flow from the Eighth Amendment, the basic human needs of pretrial detainees are "protected by the Due Process Clause of the Fourteenth Amendment." *Alderson*, 848 F.3d at 419 (citing *Cupit v. Jones*, 835 F.2d 82, 84–85 (5th Cir. 1987)). Notwithstanding this distinction, ultimately the Eighth Amendment deliberate indifference standard announced in *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994), is "the appropriate standard for all denial of medical care claims under the Eighth and Fourteenth Amendments." *Coker v. Dallas Cnty. Jail*, No. 3:05-CV-0005-M, 2007 WL 3022575, at *16 (N.D. Tex. Oct. 17, 1007) (citing *Hare*, 74 F.3d at 645).

Deliberate indifference is "an extremely high standard." *Domino v. Texas Dept. of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). And as *Farmer* further instructs, it is not enough that the official "should have perceived [the risk] but did not[.]" 511 U.S. at 838. Nor is it enough that the official was negligent or even grossly negligent. *Hare*, 74 F.3d at 645. Rather, Taylor must plausibly allege that the Defendants "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

To successfully claim deliberate indifference to medical needs, a plaintiff must satisfy both an objective and subjective test. *Rogers v. Boatright*, 709 F.3d 403, 410 (5th

8

Cir. 2013). An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with their medical treatment does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). The prison staff must have engaged in conduct that shows "a wanton disregard for any serious medical needs." *Treen*, 759 F.2d at 1238.

### 2.    *Taylor has not shown deliberate indifference by the jailer Defendants.*

Initially, the undersigned notes, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *see also Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action") (citing *Rizzo v. Goode,* 423 U.S. 362, 371–72 (1976). The undersigned attempted through the questionnaire to develop Taylor's allegations of personal involvement in deliberate indifference on the parts of these non-supervisory Defendants. *See* Dkt. No. 13 at 6–12. And in response to that questionnaire, Taylor broadly claims each of the jailer Defendants was personally involved in providing him incorrect insulin on September 18, 2020. *Id.* at 2–10.

9

Specifically, Taylor alleges that Garcia "was made aware of [his] fear of receiving the wrong insulin" and that "the denial of allowing [him] to witness" the drawing of his insulin "resulted in the Sept 18, 2020 overdose of the incorrect medication." *Id.* at 7. Taylor alleges that Galvan "was aware of the possibility of [him] receiving the wrong medication . . . and failed to ensure [his] right to proper medical care was seen." *Id.* at 8. Taylor claims Lozano "was present and aware of the possible administration of the lethal dose of insulin and failed to ensure [his] saf[e]ty and medical rights." *Id.* at 9. Taylor claims Gardena "acted in concert with Officers" Garcia, Galvan, and Lozano. *Id.* at 9–10.

But other than these broad, conclusory allegations, Taylor does not claim or plead facts supporting that Garcia, Galvan, Lozano, or Gardena were personally involved in administering insulin to him on September 18, 2020. He fails to provide a link between the insulin episode and the action of any Defendant. Instead, Taylor's Amended Complaint simply alleges that an "unqualified jailer deliberately drew up the wrong medication . . . ." Dkt. No. 18 at 6. Taylor does not assert, either through his Amended Complaint or questionnaire responses, that the "unqualified jailer" was one of the jailer Defendants. Nor does he allege that any of the jailer Defendants were present for the preparation or administration of his insulin or otherwise aware that the wrong insulin was drawn up or administered.[3] *See* Dkt. Nos. 13, 15, 18, 19, 38. Nor does Taylor claim that any jailer

---

[3] In Taylor's Amended Complaint, he claims that Defendants Galvan, Lozano, and Gardena all dispensed "a lethal dose of wrong medication," but he fails to specify who injected him with the medication or how the Defendants he lists knew it was the wrong insulin. Dkt. No. 18 at 4. Taylor does not identify or claim that any of the Defendants he lists is the jailer who came to Taylor when Taylor returned from the hospital claiming he prayed for him all night because he thinks he gave him the wrong dose of insulin. Even if

Defendant failed to respond after his blood sugar began to drop. *See id*. Instead, Taylor concedes that the unknown "jailer came to [him], apologized, stated he prayed all night for [him] and claimed he may have given [him] the wrong insulin." Dkt. No. 18 at 7.

And notwithstanding Taylor's allegation that the jailers were "present and aware of the possible administration" of the wrong insulin, Taylor does not allege that any of the jailer Defendants were present for the preparation of his insulin or otherwise aware that the wrong insulin had, in fact, been drawn and administered. *See* Dkt. Nos. 13, 15, 18, 19, 38.

At most, Taylor's allegations plausibly establish that the jailers were aware of his subjective fears of receiving the wrong medication and the possibility that might happen if he was not allowed to witness the insulin being drawn. But those allegations, accepted as true, stop short of plausibly establishing that a jailer's refusal to allow an inmate to personally observe the preparation of their medications constitutes an objective exposure to a substantial risk of serious bodily harm. *See Gobert*, 463 F.3d at 345–46. Nor do these allegations plausibly demonstrate that any of the jailer Defendants both knew that not allowing Taylor to observe the drawing of his insulin exposed him to a substantial risk of serious harm and, despite being aware of that substantial risk, refused to take reasonable steps to protect him. *Id*. at 346. Again, it is not enough that the official was negligent or even grossly negligent. *Hare*, 74 F.3d at 645.

In short, Taylor had no constitutional or other federally protected right to dictate the specifics of how his medicine would be administered, particularly in the absence of prior

---

Taylor did make a claim against this unknown individual, his statements to Taylor upon his return from the hospital show that he did not purposely disregard an objective risk of harm to Taylor.

Case 1:21-cv-00122-C    Document 45    Filed 11/07/23    Page 12 of 27    PageID 201

instances of being administered the wrong medicine, which Taylor does not allege. *See Gobert*, 463 F.3d at 346 ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment . . ."). And while this single instance on September 18 was undoubtedly frightening and dangerous, there is no indication it was anything other than the isolated actions of a remorseful jail official who was at most negligent and without any wanton disregard on his or anyone else's part.

For these reasons, the undersigned RECOMMENDS that Taylor's claims of deliberate indifference against the jailer Defendants—Garcia, Galvan, Lozano, and Gardena—be dismissed for failure to state a claim upon which relief may be granted.

### 3. *Taylor has failed to state a claim against Michelle Corley.*

Taylor claims the nurse, Michelle Corley, "was made aware of [his] concern of being given the incorrect medical by unqualified staff" and "[d]espite her responsibility of ensuring that inmates are given the correct medications," she "allowed unqualified jailers to dispense medications, including insulin without proper office[i]al training and qualifying in the medical field." Dkt. No. 18 at 6. He also alleges that Corley "failed to assist me in psychological situations" and "falsified paperwork causing injury." *Id.* at 3.

As an initial matter, Taylor has failed to allege Corley's personal involvement in the September 18 incident. Instead, Taylor merely alleges that Corley allowed jailers to dispense medications. But Taylor does not allege that Corley personally sanctioned the unknown jailer's actions on September 18 or was otherwise aware of a substantial risk that the unknown jailer would draw and administer the wrong insulin. There is nothing beyond

12

bare conclusions to suggest that Corley was involved in the September 18 incident. These bare conclusions lack the facts necessary to nudge Taylor's claim against Corley across the line from merely conceivable to plausible, and for this reason, this claim must be dismissed. *See Twombly*, 550 U.S. at 570.

As for Taylor's allegations of Corley's failure to assist Taylor in "psychological situations," Taylor's Amended Complaint does not go into further detail. Without more facts, Taylor cannot state a claim for relief based on Corley's alleged failure to assist him in "psychological situations." The same is true regarding Taylor's claim that Corley falsified paperwork. Taylor does not explain what this paperwork was or how Corley's allegedly false statements caused him harm.

For these reasons, the undersigned RECOMMENDS that Taylor's deliberate-indifference claim against Corley be dismissed for failure to state a claim upon which relief may be granted.

### 4.    *Taylor has failed to state a claim against Robert Young.*

Taylor's allegation against Young is that Taylor "suffered multiple diabetic cris[e]s from low blood sugar and insulin levels" and "despite these cris[e]s Dr. Young failed to evaluate and adjust my medication that sustained a blood sugar level that fell within a normal range." Dkt. No. 13 at 6. However, Taylor fails to provide facts as to when these crises occurred, how they occurred, how Young responded, or how his response was constitutionally deficient.[4] *See id.* While Taylor clearly disagrees with the medical

---

[4] Although Taylor claims that "Dr. Young only decreased my insulin after a video visit," this allegation does not explain how Dr. Young's actions, if at all, contributed to other diabetic crises. *See* Dkt. No. 13 at 11.

decisions of Young as they relate to his management of Taylor's diabetes, this disagreement does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346.

Rather than provide factual specifics as to how and why Young's actions constituted deliberate indifference, Taylor describes Young's liability as stemming from Young being "ultimately responsible for [his] health care, which includes the impl[]ementation of a policy that ensure only qualified medical personnel prepare and administer medications," another reference to the single episode of Taylor receiving the wrong insulin from a remorseful jailer. Dkt. No. 13 at 6.

Again, assuming the September 18 incident presented an objective exposure to a substantial risk of serious bodily harm, Taylor's factual allegations do not plausibly support that Young was either aware that Taylor faced a substantial risk of serious harm or that he disregarded that risk by failing to take reasonable measures to abate it.

For these reasons, the undersigned RECOMMENDS that Taylor's claims of deliberate indifference against Young be dismissed for failure to state a claim upon which relief may be granted.

### B.    Taylor's claim against the supervisory Defendants in their individual capacities should be dismissed for failure to state a claim.

Through his Amended Complaint, Taylor alleges that Sheriff Jimenez, Captain Garza, and Lieutenant Marsh "failed to establish correct procedures for dispensing insulin" in the JCJ.[5] Dkt. No. 18 at 3. In other words, he claims that they implemented

---

[5] The undersigned addresses Taylor's *Monell* claim against Jones County separately below. The undersigned also notes that Taylor's insulin-policy claims against Jones County simply mirror his individual-capacity

unconstitutional practices related to the administration of insulin at JCJ. Dkt. No. 13 at 2–10.

Because personal involvement is an essential element of a § 1983 claim, a supervisor's liability cannot be based solely on the conduct of their subordinates. *Thompson*, 709 F.2d at 382. Supervisory officials may be held liable under § 1983 for constitutional violations committed by subordinates only if the supervisor (1) affirmatively participated in the acts that caused the constitutional deprivation or (2) implemented unconstitutional policies that causally result in a constitutional injury. *Porter v. Epps*, 659 F.3d 440, 445–46 (5th Cir. 2011). "[A] supervisor may be held liable if he is not personally involved only if the supervisory official implements a policy 'so deficient that the policy is itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Carter v. Livingston*, No. 9:17-cv-40, 2021 WL 836865, at *8 (E.D. Tex. Jan. 20, 2021) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

### 1. *Taylor's factual allegations fail to plausibly allege that the supervisory Defendants were personally involved in a violation of his rights.*

For each supervisory Defendant, Taylor was asked to "describe what the defendant personally did or failed to do that caused [him] harm or violated [his] rights." Dkt. No. 13 at 4. Taylor responded that Jimenez violated his rights because Jimenez "personally" assured Taylor that his medical needs would be taken care of. *Id.* Taylor also claimed that Garza personally violated his rights because he filed grievances about "not being present

---

claims against Defendants, where he alleges that the supervisory Defendants violated his rights through unconstitutional practices.

when [his] insulin was prepared," and she told him "that [his] issue would be resolved." *Id.* And Taylor asserts that Marsh personally violated his rights because Marsh "was personally made aware of [his] condition, [his] worry of being given the wrong medication . . . ." *Id.* at 4.

Accepting these allegations as true, at most, they support that Jimenez, Garza, and Marsh were aware of Taylor's concerns about his medical needs, including his concern about receiving the proper insulin. But they fall short of plausibly establishing that Jimenez, Garza, or Marsh personally participated in a violation of Taylor's constitutional rights or implemented an unconstitutional policy that caused a constitutional injury.

### 2.     *Taylor fails to allege the existence of an unconstitutional policy.*

The undersigned also asked Taylor through a Magistrate Judge's Questionnaire to describe the alleged "unconstitutional policy or practice that [each] . . . defendant [personally] implemented or enforced." Dkt. No. 13 at 4. Taylor claims that Jimenez implemented unconstitutional practices because he "allowed unqualified staff to prepare and dispense [Taylor's] insulin" and that "on multiple occasions [Taylor] was left in a cell untreated, unmonitored and denied proper medical attention . . . despite showing multiple symptoms of diabetic shock . . . ." *Id.* Taylor alleges that Garza implemented unconstitutional practices because she "knew about [his] concerns of receiving the wrong insulin and what effect that insulin could have with staff not qualified to . . . administer diabetic insulin" and "could have prevented the eventual overdose." *Id.* at 5. Taylor also claims Marsh implemented unconstitutional policies because Marsh "failed to see that the proper medication was given by qualified medical staff." *Id.*

16

Taylor was also asked in the Questionnaire to describe the insulin procedures or policies he believes the JCJ should have established to avoid the alleged violation of his rights, to which Taylor responded, "I was suppose[d] to be informed and present when my insulin was prepared" and that "only a qualified nurse should administer the insulin in front of [him] to ensure [that he] is give[n] the correct medication." *Id.*

In essence, Taylor claims that Jimenez, Garza, and Marsh implemented practices at JCJ that included: (1) not allowing inmates to observe the preparation of insulin; (2) allowing unqualified jailers to prepare insulin; (3) distributing incorrect insulin to inmates; and (4) ignoring symptoms of diabetic shock when inmates are given the incorrect insulin. *See id.* at 4–5.

Accepting as true Taylor's allegations regarding the events of September 18, his facts fall short of plausibly establishing that JCJ had a *practice* of allowing unqualified jailers to dispense insulin,[6] of administering the incorrect insulin to inmates, or of ignoring inmates' symptoms of diabetic shock. *See* Dkt. No. 13 at 4. Although Taylor repeatedly references these supposed practices in his pleadings, the sole factual allegations he offers to support the existence of such practices stem from his September 18 incident. *See id.* Other than that incident, Taylor fails to allege that on any other occasion, he or any other JCJ inmate received insulin or other medication by an unqualified jailer, received the

---

[6] The undersigned notes that even if Taylor could allege the existence of a policy where unqualified individuals were tasked with preparation and distribution of insulin, he would fail to state a claim. *See Ates v. Norsworthy*, No. A-17-CV-0762-SS, 2017 WL 6210902, at *2 (W.D. Tex. Dec. 8, 2017) (finding that "[p]risoners have no constitutional right to have their medication dispensed by a licensed medical practitioner.").

17

incorrect insulin or medication, or had their symptoms of diabetic shock or other medical urgency ignored by JCJ staff. *See id.*

"Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Bennett v. City of Slidel*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). And a "policy cannot be inferred from single constitutional violations." *Id.* (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). Accordingly, the undersigned finds that Taylor fails to support, factually and plausibly, that JCJ had a policy or practice of ignoring symptoms of diabetic shock when his allegations consist of a single incident. *See Bennett*, 728 F.2d at 768. And to the extent that Taylor claims that these policies harmed him on "multiple occasions," his vague reference to other unspecified events, absent any other supporting facts, is insufficient to nudge his claim from the realm of the possible to the realm of the plausible. *See Chhim*, 836 F.3d at 469.

In contrast, Taylor provides facts that support the existence of a JCJ practice of not allowing inmates to observe the preparation of their insulin. Taylor claims that once he was incarcerated at JCJ, he "wasn't . . . allowed to visually witness the actual drawing" of his insulin. Dkt. No. 18 at 6. And he states that "a jail administrator . . . agreed to allow [him] line of sight to verify" his insulin preparation, but that "this only lasted 4 or 5 days before they reverted back to the old ways." *Id.* Accordingly, these allegations, accepted as true, plausibly support the existence of a JCJ practice of not allowing inmates to observe the preparation of insulin or other injectable medications. *See Bennett*, 728 F.2d at 768. But Taylor must plausibly establish more than just a policy or practice. He must establish an *unconstitutional* policy or practice, and here there is none. *See Porter*, 659 F.3d at 445–46.

18

Taylor's allegations of being denied the opportunity to observe the preparation of his insulin fails to state a claim under the Eighth Amendment because he cannot establish either the objective or subjective elements required for deliberate indifference, for similar reasons as discussed above in connection with the jailers. Taylor alleges that being denied the ability to observe the preparation of his insulin amounted to an objective risk of harm to his health because receiving the wrong insulin can result in a "possible lethal outcome." *See* Dkt. No. 13 at 5. Taylor supports this conclusion by referencing the previously mentioned September 18 incident that rendered him unconscious and required hospitalization. *Id.* at 6–7. And Taylor appears to allege that Defendants consciously disregarded that risk because they were aware of his fear of receiving the wrong insulin yet discontinued allowing him to observe the preparation of his insulin. *Id.* at 4–7.

These allegations, accepted as true, fall short of plausibly establishing the existence of an objective exposure to a substantial risk of serious bodily harm or an otherwise unconstitutional policy. First, as explained above, Taylor had no constitutional or other federally protected right to dictate the specifics of how his medicine would be administered, and his disagreement with that practice does not change that result. *See Gobert*, 463 F.3d at 346 ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment . . ."). Second, Taylor's argument that this practice posed a substantial risk of serious harm relies on his belief that JCJ routinely distributes the wrong insulin, for which there is no factual basis.

19

Moreover, even if the Court were to assume that JCJ's practice of not allowing inmates to witness their insulin being prepared amounted to an objective risk of harm, Taylor cannot show that Defendants implemented this practice with a conscious disregard to that harm. A prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Gobert*, 463 F.3d at 346. To say that Defendants knew this practice posed a substantial risk of serious harm but consciously disregarded it would require the Court to assume Defendants were aware that insulin was routinely administered incorrectly at the JCJ, which again has no factual basis.

Pertaining to the requirement to demonstrate a "failure to take reasonable steps to abate" an objective risk of harm, Taylor's only allegation in support of this requirement is that the Defendants failed to allow him, and presumably, other inmates like him, to witness the preparation of their medications. Accepting this allegation as true again stops short of plausibly establishing that Defendants failed to take other reasonable measures to mitigate this risk. Ultimately, the undersigned cannot agree that Taylor and other inmates have a constitutional right to witness the preparation of their medications, and to conclude otherwise would unnecessarily cause this Court to become "enmeshed in the minutiae of prison operations." *Bell v. Wolfish,* 441 U.S. 520, 547–48, 562 (1979).[7] Taylor does not allege that JCJ officials failed to take any reasonable measure to abate the claimed risk,

---

[7] While *Bell* addresses the standard for injunctive relief in the prison context, the rationale noted above illustrates here the absence of an issue of constitutional dimension and the logistical challenges posed by requiring jails and prisons to allow inmates to personally observe their medications being drawn or otherwise prepared.

just that they failed to accept his proffered measure, and then only after jail officials attempted for several days to implement Taylor's measure.

Ultimately, Taylor does not provide facts, aside from the single September 18 incident, sufficient to allow the Court to conclude that Defendants Jimenez, Garza, and Marsh plausibly knew the practice of not allowing inmates to observe the preparation of their insulin would result in incorrect insulin being given. *See French v. Quarterman*, No. 9:09CV74, 2010 WL 998354, at *7 (E.D. Tex. Jan. 22, 2010), *report and rec. adopted*, 2010 WL 998546 (E.D. Tex. Mar. 12, 2010) (finding that a prisoner's allegation that "on one occasion, he was given too much insulin, resulting in a trip to the hospital . . . failed to show that this was the result of deliberate indifference rather than mere careless or negligence").

For these reasons, the undersigned RECOMMENDS that Taylor's deliberate-indifference claims against supervisors Jimenez, Garza, and Marsh be dismissed for failure to state a claim upon which relief may be granted.

## C.  Taylor's deliberate-indifference claim against Jones County and the Defendants in their official capacities should be dismissed for failure to state a claim.

Taylor brings a claim against Jones County, as well as each Defendant in their official capacity, for monetary damages for "fail[ing] to establish correct procedures for dispensing insulin the county jail. Dkt. No. 18 at 3.

In *Monell v. Dep't. of Soc. Servs. of City of New York*, the Supreme Court held that municipalities and municipal officials sued in an official capacity are suable persons under § 1983. 436 U.S. 658, 694 (1978). But a claim against a municipal official in his official

21

capacity is tantamount to a suit against the municipal entity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67 n.7 (1989). Thus, when claims are asserted against both the municipal entity and a municipal official in his official capacity, the official-capacity claims are redundant to the municipal-entity claim and may be dismissed. *Sanders–Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010) (noting that plaintiff's § 1983 claims against the municipality "render[ed] any official capacity claim against [the municipality's employee] redundant"). For this reason, the Court considers below only the claim against Jones County and recommends the dismissal of the redundant official-capacity claims against the other individual Defendants.

Counties may be sued under § 1983 when a policy, practice, or procedure of the entity is the moving force behind a violation of federally protected rights. *See generally Monell*, 436 U.S. at 658 (holding that municipal entities, including counties, can be liable under § 1983). Official capacity claims against municipal officials are tantamount to a claim against the municipal entity that employs the official. *Will*, 491 U.S. at 67 n.7 (1989). Accordingly, the Court only addresses Taylor's claims against Jones County because any claims against Defendants in their official capacity are duplicative to the claims against Jones County. *See, e.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

To hold a municipality liable under Section 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (citations omitted).

For the reasons explained above, Taylor has not shown that any policy or practice

22

at JCJ violated his constitutional rights and thus fails to meet the core element of a *Monell* claim. *See Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694).

For these reasons, the undersigned RECOMMENDS that Taylor's claim for money damages against Jones County and the Defendants in their official capacities for the alleged implementation of unconstitutional policies be dismissed for failure to state a claim upon which relief may be granted.

**D.     Taylor's claim alleging the violation of his HIPAA rights should be dismissed for lack of subject-matter jurisdiction.**

Taylor also alleges that Officer FNU Gardena violated his HIPAA rights because she read his "personal medical records out loud in front of other officers." Dkt. No. 18 at 7. The Fifth Circuit has made clear that HIPAA, which provides civil and criminal penalties for improper disclosure of medical information, lacks an express provision creating a private cause of action, nor is one implied within the statute. *Acara v. Banks,* 470 F.3d 569, 571–72 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction over Acara's asserted claims"). Instead, the statute can be enforced only by the Secretary of Health and Human Services. *Id.* (citing 42 U.S.C. § 1320d–5).

Thus, the undersigned RECOMMENDS that Taylor's claim alleging a violation of HIPAA be dismissed for lack of subject-matter jurisdiction, frivolousness, and failure to state a claim.

**E.      Taylor's request for injunctive relief should be dismissed as moot.**

Taylor asks the Court for "permanent injunctions" to prevent similar medical incidents involving insulin from "happen[ing] to anybody again." Dkt. No. 18 at 5. Taylor is no longer incarcerated at the JCJ, and after his transfer to the custody of the Texas Department of Criminal Justice (TDCJ), he has "left prison" and is no longer incarcerated. *See* Dkt. No. 40; *see also* Dkt. No. 13 at 1.

Taylor's request for an injunction concerning the medical practices at JCJ was mooted by his release to TDCJ custody. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that a prisoner's transfer from a place of incarceration will moot claims for declaratory or injunctive relief if transfer back to the location "is too speculative to warrant relief"). Moreover, even if Taylor's claim for injunctive relief was not moot, he would fail to state a claim for injunctive relief. "'Under *Ex parte Young*, a case can proceed against individual state officials named in their official capacities when the claim is for an ongoing violation of federal law,'" provided the relief sought is prospective in nature. *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (quoting *Daves v. Dallas Cnty.*, 984 F.3d 381, 397 (5th Cir. 2020)). Although Taylor seeks relief that is prospective in nature, as the analysis above demonstrates, he has failed to allege an ongoing violation of federal law.

For these reasons, the undersigned finds that Taylor's request for injunctive relief is moot and RECOMMENDS that any claim seeking injunctive relief be dismissed with prejudice for failure to state a claim.

24

**F.    Taylor is not entitled to additional leave to amend his claims.**

Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile; in other words, the amended complaint would still fail to state a claim, *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend their claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

When a court provides a pro se plaintiff with the opportunity to further develop the factual bases for his claims through a questionnaire, the plaintiff's answers "act as an amendment to [the] pro se plaintiff's complaint." *Ravey v. Collier*, No. 7:22-CV-056-M-BP, 2023 WL 2483489, at *4 (N.D. Tex. Feb. 14, 2023), *report and rec. adopted sub nom.*, 2023 WL 2481608 (N.D. Tex. Mar. 13, 2023) (citing *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994)). Thus, if a "prisoner has filed his complaint and submitted questionnaire responses, then the Court may conclude he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay." *Bell v. Smith*, No. 7:22-CV-00033-M-BP, 2022 WL 10177702, at *4 (N.D. Tex. Aug. 2, 2022), *report and rec. adopted*, 2022 WL 10207659 (N.D. Tex. Oct. 17, 2022) (citing *Witherspoon v. Waybourn*, No. 4:20-CV-1150-P, 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021)).

Here, Taylor has filed a Complaint, an Amended Complaint, Questionnaire Responses, Supplemental Questionnaire Responses, and Second Supplemental

Questionnaire Responses. *See* Dkt. Nos. 2, 13, 15, 18, 19, 38. Given these previous opportunities, the undersigned finds that Taylor has pleaded his best case and further leave to amend is not warranted.

## VI.  CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that Taylor's:

(1) deliberate-indifference claims against FNU Garcia, FNU Galvan, FNU Lozano, FNU Gardena, Michelle Corley, and Robert Young be DISMISSED for failure to state a claim upon which relief may be granted;

(2) deliberate-indifference claims against Sheriff Danny Jimenez, Racheal Garza, and FNU Marsh in their individual capacities be DISMISSED for failure to state a claim upon which relief may be granted;

(3) claims against Jones County and the Defendants in their official capacities be DISMISSED for failure to state a claim upon which relief may be granted; and

(4) HIPAA claim against FNU Gardena be DISMISSED for lack of subject-matter jurisdiction, frivolousness, and failure to state a claim upon which relief may be granted; and,

(5) request for injunctive relief be dismissed as moot and for failure to state a claim.

## VII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R.

Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VIII.  TRANSFER OF CASE

Having completed the preliminary screening of Taylor's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the Senior United States District Judge and designated as Civil Action No. 1:21-CV-00122-C.

ORDERED this 7th day of November 2023.


_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE